## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### CASE NO: 9:14-CV-81176-ROSENBERG/BRANNON

RUBY WARNER,

          Plaintiff,

   v.

WALGREEN CO., d/b/a WALGREENS,

          Defendant.

_____ /

### DEFENDANT'S MOTION FOR AND MEMORANDUM IN SUPPORT
### OF SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS IN THE ENTIRETY

Defendant Walgreen Co. ("Walgreens"), pursuant to Fed. R. Civ. P. 56(c) and L.R. 7.1, moves for summary judgment on Plaintiff's claims for overtime pay under the Fair Labor Standards Act ("FLSA"). In accordance with L.R. 56.1, Walgreens attaches a statement of undisputed material facts ("SUF") with this request. Nearly all facts therein derive from Plaintiff's own testimony, discovery responses, and exhibits she explained or referenced during her deposition. This Court should enter summary judgment on Plaintiff's claims, as the facts and relevant authority establish that Walgreens properly classified her as overtime-exempt under the FLSA's executive exemption, the administrative exemption, and/or a combination of both. *See* 29 U.S.C. § 213(a)(1); 29 C.F.R. §§ 541.100 *et seq.*, -.200 *et seq.*, and -.708.

In the alternative, this Court should enter summary judgment against Plaintiff on her claim that Walgreens willfully violated the FLSA, in light of her representations in *Teramura, et al. v. Walgreen Co.*, W.D. Ark., Case No. 12-cv-5244 ("*Teramura*"), as well as her concession in this case that she has no evidence to carry her burden of proving a willful violation. Should Plaintiff argue that *Teramura* does not apply to her, then this Court should accordingly rule that she is not entitled to the tolling provided by that case, such that her claim is time-barred if she cannot prove a willful violation, or it reaches back no further than September 12, 2011 if she can.

## INTRODUCTION

Plaintiff alleges that she is owed a windfall of overtime pay for work she performed as a salaried, overtime-exempt Executive Assistant Manager ("EXA")—the most senior position in a Walgreens' retail store, but for the Store Manager.  Plaintiff claims she was misclassified because her "primary," or most important, duty was to perform duties her subordinates also performed, such as stocking shelves, rather than the managerial duties Walgreens expected her to perform, trained her to perform, paid her a salary and management bonuses to perform, evaluated her upon, and that Plaintiff admits she performed, albeit for less than the majority of her days.  Such allegations contradict not only the case law in this District and ample evidence confirming that Plaintiff's most important function was management, but also to Plaintiff's pre-lawsuit self—one who wrote in her resignation letter:  "The EXA knows more about the store than most managers.  We run the store when the manager is not present in some cases most of the time."

Prior to filing this lawsuit, Plaintiff was an opt-in plaintiff who participated in discovery in *Teramura*, a once-conditionally-certified collective action in which the plaintiffs alleged that, as EXAs, they were misclassified as overtime-exempt.  While Plaintiff was participating in and represented by counsel in *Teramura*, the parties entered into a joint motion to decertify the collective.  In  support of that joint motion, the parties represented to the Court that the "executive exemption's duties requirements are certainly met by the vast majority of Plaintiffs and Opt-In Plaintiffs" and suggested that any exceptions may nevertheless qualify for the administrative or combination exemptions.  (*Teramura*, Dkt. 283, at 22-23.)  Despite her representations in *Teramura*, Plaintiff filed this lawsuit, claiming not only that Walgreens violated the FLSA, but that it did so willfully.  Yet, the evidence in this case confirms instead Plaintiff's prior representations in *Teramura*.

The evidence before this Court, including Plaintiff's own testimony, establishes that Plaintiff's duties as an EXA satisfy: (1) the executive exemption; (2) the administrative exemption; and/or (3) the exemption for employees "whose primary duty involves a combination of exempt administrative and exempt executive work."  *See* 29 C.F.R. §§ 541.100 *et seq.*, -.200 *et seq.*, and -.708.  As an EXA, Plaintiff was second-in-command of the stores where she

worked, reporting only to a Store Manager ("SM") who Plaintiff claims was absent from the store for 55% to 60% of the time Plaintiff was there.  If her claims are true, Plaintiff was the sole exempt manager running her store for up to an average of 36 hours each week.  Moreover, regardless of whether her SM was present in the store, Plaintiff was expected to perform and did perform a litany of exempt managerial duties that she described in her deposition, such as interviewing, training employees, adjusting their schedules, directing their work, disciplining them with the understanding that her decisions could lead to their termination, planning and apportioning their work, providing for their security and that of the store, analyzing store performance data and identifying areas for improvement, and helping to ensure legal compliance.

Yet, Plaintiff claims that Walgreens misclassified her and willfully violated the FLSA.  She suggests, for example, that Walgreens misclassified her because, in addition to her managerial duties, she also helped stock shelves, work cashed registers, and "unload" trucks.  Plaintiff would have this Court ignore her admissions that, even while performing these tasks, she never took off her proverbial manager's hat—she delegated these and other tasks to her staff, and she concurrently supervised those who reported to her.  To the extent Plaintiff predictably suggests Walgreens misclassified her because a non-exempt Management Trainee ("MGT") exercised some of the same managerial authority that she did.  Of course, she admits that the MGT could not delegate or direct work to her, discipline her, coach her, or train her, while she could do all of those things to the MGT (and to anyone else subordinate to her).

In short, Plaintiff cannot present *material* evidence to refute the propriety of her exempt classification.  Even President Obama, in connection with his recent direction to revise the regulations governing the exemptions that Plaintiff satisfies, has recognized that retail managers like Plaintiff are exempt.  In a March 2014 White House Press Release, the President noted that "a convenience store manager or a fast food shift supervisor or an office worker may be expected to work 50 or 60 hours a week" without overtime pay. [1]

---

[1] *Fact Sheet, Opportunity for All: Rewarding Hard Work by Strengthening Overtime Protections*, The White House, Office of the Press Sec'y (Mar. 13, 2014) (www.whitehouse.gov/the-press-office/2014/03/13/fact-sheet-opportunity-all-rewarding-hard-work-strengthening-overtime-pr).

## SUMMARY OF FACTS

Plaintiff began working for Walgreens in 1999 as an hourly, overtime-eligible MGT. Prior to this, she was an assistant store manager and a store manager with two retailers.  (SUF ¶ 1.)  Her prior employers provided her training, including a three-month management training program that signified to her the importance the employer placed on management.  (SUF ¶ 1.)

In 2006, after seven years as an MGT and after being twice refused advancement to the EXA role she sought, Walgreens promoted Plaintiff to EXA.  (SUF ¶¶ 2, 6.)  She entered into a three-month management training program called Applied Drug Store Management, or "ADSM."  (SUF ¶ 8.)  ADSM was a robust program comprising in-person lectures, online courses, case studies, and on-the-job exercises regarding the management functions necessary to manage a store.  (SUF ¶ 8.)  As a general matter, Walgreens did not hire EXAs from external sources; rather, EXAs were promoted from MGT after proving themselves ready to enter ADSM.  (SUF ¶ 35.)  By this training, Walgreens ensured its homegrown managers knew how to perform the managerial duties for which they were responsible, and it held them accountable for those duties through annual evaluations and other feedback. (SUF ¶¶ 23-24.)

Plaintiff seeks damages under the FLSA for the period running from April 5, 2010—three years before she joined *Teramura* and approximately four and a half years before she filed this lawsuit— to August 29, 2012, when she voluntarily resigned from Walgreens.  During that time, she supervised approximately 90 employees in the several stores where she worked.  (SUF ¶ 11.)

As an EXA, Plaintiff reported to a SM.  She testified that her SM was absent 55% to 60% of the time, leaving her as the sole exempt, salaried manager "running her stores" while they were away.  (SUF ¶ 10 (citing Pl. Dep. 130:20-131:21; 138:1-17; 139:15-141:8).)  If Plaintiff's claim of working an average of 50 to 60 hours per week is true, then Plaintiff was the sole manager running her store for 30 to 36 hours per week.  According to Plaintiff, "EXA[s] know[] more about the stores" than the SMs who are away from the stores so often, even on the days where the positions' shifts overlap.  (SUF ¶ 9 (citing Ex. 2, Pl.'s Aug. 27, 2012 Letter).)

Irrespective of whether she worked at the same time as an SM, Plaintiff performed a multitude of managerial duties that Walgreens trained her to do, expected her to do, evaluated

her for doing, and that she evaluated herself as having done very well.  Two job descriptions—
one from June 2005 and the other from November 2010—describe Walgreens' expectations for
the EXA role during the relevant period.  (SUF ¶ 37 (citing Exs. 10 and 11).)  Per the
descriptions, Walgreens expected EXAs like Plaintiff to, *inter alia*:

- "Implement[] store organization structure through proper hiring and placement, scheduling of work, assignment of responsibility, and delegation of authority."

- "[P]lan staffing needs, manage applicants, make hiring recommendations, & bring candidates on board."

- "[S]upervise employees by assigning tasks, providing training, giving feedback, & addressing issues through constructive discipline and/or making disciplinary recommendations."

- "Recommend[], direct[], and attain[] store and department gross profit and income budgets."

(*Id*.)  Also, as the 2005 description explains, the EXA was "accountable for improving unit sales,
profits, and images through the overall development and protection of store assets, the hiring,
training, development, performance feedback, and constructive discipline of personnel, and the
proper service to all customers."  (*Id*.)

Plaintiff admits she performed managerial duties.  For example, she testified in great
detail not just about the fact that she delegated work to her staff, but about the thought processes
she undertook to ensure that she was delegating effectively.  (SUF ¶ 14.)  Plaintiff testified that
she "gave" discipline to her subordinates that "could actually lead to an employee being
terminated."  (SUF ¶ 15.)  She testified that she tried to "empower" her staff by giving them
positive feedback.  (SUF ¶16.)  She testified that she offered recommendations to her SMs about
how to manage the store more effectively.  (SUF ¶ 17.)  She testified that she analyzed KPIs,
which she used to identify areas for improvement in the various store departments.  (SUF ¶ 18.)
While Plaintiff testified that she also helped stock shelves, work cash registers, and "unload"
trucks, she admits she never took off her manager's hat—she delegated these and other tasks to
her staff, and she concurrently supervised those who reported to her.  (SUF ¶¶ 14, 21.)

In addition to the managerial responsibilities that Plaintiff admits she performed (*see* SUF
¶¶ 12-18, ), her former SMs testified that Plaintiff had actual authority to:  hire candidates for

employment, recommend subordinates' promotion, make their schedules, and make recommendations regarding the termination of employment that would be considered seriously. (SUF ¶ 38 (citing Prado Dep. 172-76; Acton Dep. 159-62).)  District Managers ("DM") Vily Markovich and Lazar Jones, to whom Plaintiff's SMs reported, likewise confirmed the broad authority that EXAs like Plaintiff held in their roles. [2]  (SUF ¶ 38 citing Markovich Dep. 118:5-121:7; Jones Dep. 104:13-21; 113:23-117:4.)

Plaintiff's annual "self-evaluations" confirm that, in her own estimation, she met Walgreens' expectations of EXAs.  In 2009, she rated herself as "outstanding"—the highest rating—in competencies such as Delegation, Analysis, Teamwork, and Leadership, among other competencies.  (SUF ¶ 23 (citing Ex. 5, 2009 Evaluation).)  Though she rated herself lower in 2010 and 2011, she testified that her performance was similarly outstanding in all respects during entire her time as an EXA, regardless of her store.  (SUF ¶ 24 (citing Pl. Dep. 226:2-14; 230:18-20).)  For example, in her 2011 evaluation, she indicated that she was "Exceeding Expectations" at "leading teams," a competency defined as follows:

> **Leads Teams -** *Encourages common effort and results; facilitates team processes balancing structure, guidance, and empowerment to enable a team to accomplish its goals.*
>
> **Behaviors:**
>
> - *Provides leadership to company employees by serving as a role model and instilling ownership, empowerment, and motivation.*
> - *Has a clear vision for the future and gives clear assignments.*
> - *Encourages people to put in their best effort and inspires team to maintain momentum and commitment in the face of obstacles.*
> - *Gains commitment from staff by building credibility, setting high standards and holding people accountable.*

(SUF ¶ 24 (citing Ex. 7, 2011 Evaluations).)  In her 2010 self-evaluation, Plaintiff rated herself

---

[2] Regional Vice President Skip Bourdo, deposed by Plaintiff as Walgreens' corporate representative pursuant to Fed. R. Civ. P. 30(b)(6), also confirmed that Walgreens expected EXAs like Plaintiff to exercise broad managerial authority, like interviewing, hiring, recommending candidates to be hired, coaching, training, evaluating, appraising, disciplining, and terminating employees, or making recommendations about their termination.  (Bourdo Dep. 59:6-60:8; SUF  ¶ 37.)

as "Above Average" in the competency of "Analysis", which Walgreens defined as:

> *Evaluates store reports and results, and other complex situations in a logical and systematic way to identify operating issues and trends.  Identifies the most critical issues and factors that need to be addressed and exhibits skills in quantitative analysis.*

(SUF ¶ 24 (citing Ex. 6, 2010 Evaluation).)  Of this, Plaintiff explains that she analyzed Key Performance Indicators, or "KPIs," which allowed her to "see what progress" various departments in her store "need to do to increase sales, what's going on in the area that they're not." (SUF ¶ 18 (citing Pl. Dep. 195:8-198:6).)  If the KPIs showed an area for improvement in a department, Plaintiff would discuss what she saw with the department head, "giving her direction to ensure she was meeting her goals."  (SUF ¶ 18 (citing Pl. Dep. 198:7-12).)

Walgreens' corporate representative confirmed that it appeared Plaintiff at least fulfilled Walgreens' expectations of her as an EXA, even if her managers did not necessarily agree with Plaintiff's stellar opinion of her own performance.  (SUF ¶ 36 (citing Bourdo Dep. 65:15-66:6).)  It was important that Plaintiff meet or exceed expectations, given that she was the sole and highest ranking exempt manager in the store for over half the time.  (SUF ¶ 9.)

In short, Plaintiff was a crucial part of each store's management, without which each store would have faltered.  (SUF ¶ 36 (citing Ex. 9, Bourdo Decl. ¶ 57:5-58:19).)  At least with respect to one of her competencies, Plaintiff recognized this, explaining that she did an outstanding job of managing her store towards excellent customer service because that was "one of the most important aspects of Walgreens' operations."  (SUF ¶ 16 (citing Pl. Dep. at  177:3-16).)  Taking all of this as context, it is no surprise that Plaintiff does not possess any evidence that Walgreens violated the FLSA.  From her explanation of how she came to file this lawsuit in the first place (*see* SUF ¶¶ 26-28), and given her representations in *Teramura*, it would be reasonable to question whether this suit should have been filed at all.

In exchange for the performance of her managerial functions as an EXA, Walgreens rewarded Plaintiff by paying her a salary of approximately $52,000.00 and making her eligible for bonuses that only salaried managers were eligible to receive and that were based on the store's performance (for which she was responsible).  (SUF ¶¶ 25, 33.)  MGTs, who were not bonus eligible, earned an average hourly rate of $15.33 - $15.95 during the years at issue.  That

is an annualized $31,866.40 - $33,176.00.  Hourly "crew" members made an average of $9.27 - $9.39, which annualizes to $19,281.00 - $19,531.20.  (SUF ¶ 34.)[3]

## SUMMARY JUDGMENT STANDARD IN FLSA MISCLASSIFICATION CASES

In an FLSA case, "the question of whether the employee's particular activities exclude her from the overtime benefits of the FLSA is a question of law" that may be determined by the court on summary judgment.  *Langley v. Gymboree Ops., Inc.*, 530 F. Supp. 2d 1297, 1301 (S.D. Fla. 2008) (citing *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986)).[4]  A defendant does not bear any heightened burden of proof in establishing the applicability of an exemption under the FLSA.  *See Yi v. Sterling Collision Ctrs., Inc.,* 480 F.3d 505, 507 (7th Cir. 2007).

Summary judgment is mandated when, as here, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Of course, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there [is] no genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party.  *Id.* at 248; *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  It is "material" if it might affect the outcome of the case under the governing law. *Anderson*, 477 U.S. at 248.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Id.* at 249-50 (citations omitted).  The court is not required to, nor should it, "scour the record in search of the evidence that would defeat" the motion; this duty belongs to the non-movant alone.  *Lawrence v. Wal-Mart Stores, Inc.,* 236 F. Supp. 2d 1314, 1322 (M.D. Fla. 2002) (citing *Celotex,* 477 U.S. at 324).  Of course, a plaintiff may not

---

[3] Incidentally, hourly employees working in the pharmacy during this timeframe earned an average of $13.62-$13.72 per hour, or $28,329.60-$28,537.60 per year.  (SUF ¶ 34.)

[4] *See also Webb v. Athens Newspapers, Inc.*, 999 F. Supp. 1464, 1466 (11th Cir. 1998) (granting summary judgment for the defendant on the grounds that employees were exempt under the FLSA); *Louis-Charles, supra,* 595 F. Supp. 2d 1304 (granting summary judgment for defendant, holding that employees were properly classified as exempt under the FLSA)).

avoid summary judgment by disputing her own admissions.  *See e.g, Calvo v. B&R Supermarket, Inc.*, No. 13-cv-24000, 2014 WL 5473565, at *2 (S.D. Fla. Oct. 28, 2014) (Bloom, J.) (disregarding plaintiff's declaration where it "consists in large part of self-serving statement and opinions otherwise unsubstantiated by the record before the court.").

        As laid out in Walgreens' SUF, the record is replete with Plaintiff's admissions that she performed duties that satisfy the tests for one or more overtime exemptions.

## ARGUMENT AND CITATION TO AUTHORITY

        The FLSA exempts from its minimum wage and overtime requirements "any employee employed in a bona fide executive, administrative, or professional capacity."  29 U.S.C. § 213(a)(1).  Plaintiff's claims fail as a matter of law because she was exempt under the executive or administrative exemptions, or because her "primary duty involves a combination of exempt administrative and exempt executive work."  *See* 29 C.F.R. §  541.708.

**I.      Plaintiff Was Exempt Pursuant to the FLSA's Executive Exemption**

        To qualify for the executive exemption, an employee paid on a salary basis at a rate of at least $455 per week[5] must have: (i) had management as her primary duty; (ii) customarily and regularly directed the work of two or more employees;[6] and (iii) had authority to hire or fire other employees or had her recommendations as to the hiring, firing, advancement, promotion, or other change in status of employees considered seriously.  *See* 29 C.F.R. § 541.100(a).

        **A.      Plaintiff's Primary Duty Was Management**

        An employee's "primary duty" is defined as the "principal, main, major, or most important duty that the employee performs."  29 C.F.R.§ 541.700.  Although time spent performing work is a helpful guide in determining primary duty—for example, an employee who spends more than 50% of her time on exempt work is presumed to satisfy the primary duty requirement—it is not the sole test, and "nothing . . . requires that exempt employees spend more

---

[5] It is undisputed that Plaintiff was paid on a salary basis and at a rate exceeding $455 per week. (SUF ¶ 33.)

[6] Plaintiff cannot dispute that she directed the work two or more employees.  She admits she supervised as many as 90 employees, in total, during the relevant period.  (SUF ¶ 11.)

than 50 percent of their time performing exempt work." 29 C.F.R.§ 541.700(b). The United

States Department of Labor ("DOL") has specifically addressed the question of whether assistant

retail store managers may be classified as exempt even when devoting substantial amounts of

time to nonexempt work.[7]  In its regulations defining "primary duty", the DOL provides:

> Thus, for example, ***assistant managers in a retail establishment*** who perform
> exempt executive work such as supervising and directing the work of other
> employees, ordering merchandise, managing the budget and authorizing payment
> of bills may have management as their primary duty ***even if the assistant***
> ***managers spend more than 50 percent of the time performing nonexempt work***
> ***such as running the cash register.***

29 C.F.R. § 541.700(c) (emphasis added).  In its description of duties that will satisfy the test for

the executive exemption, it provides:

> For example, an assistant manager in a retail establishment may perform work
> such as serving customers, stocking shelves and cleaning the establishment, but
> performance of such non-exempt work does not preclude the exemption if the
> assistant manager's primary duty is management. An assistant manager can
> supervise employees and serve customers at the same time without losing the
> exemption. An exempt employee can also simultaneously direct the work of other
> employees and stock shelves.

*Id.* at § 541.106(b).

Against this backdrop, the DOL provides guidance to assess an employee's primary duty

by stating a number of non-exclusive factors that may be considered, including, "the relative

importance of the exempt duties as compared with other types of duties; the amount of time

spent performing exempt work; the employee's relative freedom from direct supervision; and the

relationship between the employee's salary and the wages paid to other employees for the kind

of nonexempt work performed by the employee." 29 C.F.R. § 541.700(a).  Nonetheless, "[a]n

---

[7] "Congress expressly authorized the Secretary of Labor to define the scope of the executive,
administrative, and professional employee exemptions [in section 213(a)(1) ]." *Avery v.*
*Talladega*, 24 F.3d 1337, 1340 (11th Cir. 1994) (citation omitted).  "To determine whether a
genuine issue exists about whether Plaintiff qualified as an "administrative" or "executive"
employee within the meaning of section 213(a)(1), the Court looks to applicable case law and to
the Code of Federal Regulations." *Alvarez v. Key Transp. Serv. Corp.*, 541 F. Supp. 2d 1308,
1312 (S.D. Fla. 2008).  "Such legislative regulations are given controlling weight unless they are
arbitrary, capricious, or manifestly contrary to the statute." *Avery*, 24 F.3d at 1340 (quoting
*Chevron, USA, Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984)).

employee's 'primary duty' is determined based on all of the facts in a particular case, with emphasis placed upon the character of the employee's job as a whole." *Langley*, 530 F. Supp. 2d at 1300. "[N]umerous courts have held that when considering the question concerning whether management was an employee's 'primary duty,' a more useful question is whether or not the employee's managerial duties constituted the primary value the employer placed on the employee." *Brillas v. Bennett Auto Supply, Inc.*, 675 F. Supp. 2d 1164, 1168 (S.D. Fla. 2009).[8]

"The person 'in charge' of a store is generally considered to have management as a primary duty, even if that person spends more aggregate time performing non-exempt duties and 'makes few significant decisions.'" *Rutenberg*, 2010 WL 135100, at *3 (quoting *Donovan v. Burger King Corp.*, 672 F.2d 221, 227 (1st Cir. 1982)).[9] In this same vein, "[c]ases applying 29 C.F.R. § 541.700 hold that assistant managers are exempt as long as they perform some management tasks." *Brillas*, 675 F. Supp. 2d at 1164; *see also Jackson v. Advance Auto Parts*, 362 F. Supp. 2d 1323, 1334 (N.D. Ga. 2005) (holding that despite spending "90% of their time performing nonexempt tasks, including selling, operating the register and cleaning the store," assistant managers were exempt where "they worked without supervision for a majority of their working hours, and thus were in charge of their respective stores during these times").[10]

---

[8] *See also Dalheim v. KDFW–TV*, 918 F.2d 1220, 1227 (5th Cir. 1990) (noting that "primary duty is what [an employee] does that is of principal value to the employer, not the collateral tasks that she may also perform, even if they consume more than half her time"); *Bosch v. Title Max, Inc.*, 2005 WL 357411, at *6 (N.D. Ala. Feb. 7, 2005) ("A more useful question is whether or not [employee's] managerial duties constituted the primary value her employer placed upon her.").

[9] *See also Pendlebury v. Starbucks*, 2008 WL 763213 (S.D. Fla. Mar. 13, 2008) (same); *Johnson v. Big Lots Stores, Inc.*, 604 F. Supp. 2d 903, 915 (E.D. La. 2009) (holding management was plaintiff's primary duty where he was "manager[] in charge" for all or great majority of week).

[10] *See also Diaz v. Team Oney, Inc.*, 2008 WL 9463871 (S.D. Fla. 2008), *aff'd by* 291 F. App'x 947 (11th Cir. 2008) (granting summary judgment to employer on misclassification claim of Papa John's assistant store manager who spent majority of time on non-managerial tasks); *Cort v. Kum & Go, L.C.*, 2013 WL 542813 (W.D. Mo. Feb. 11, 2013) (store manager who spent 80% of time on non-managerial tasks was exempt); *In re Family Dollar FLSA Litig.*, 637 F.3d 508 (4th Cir. 2011) (store manager who spent 99% of time "doing freight" was exempt); *Leonard v. Dolgencorp Inc.*, 2011 WL 2009937 (W.D. Ky. May 23, 2011) (store manager who spent 70% of time on non-managerial tasks was exempt); *Aschenbrenner v. Dolgencorp, Inc.*, 2011 WL 2200630, at *10-14, 19 (D. Neb. June 3, 2011) (store manager who spent 85% of time on non-

Per the DOL, "management" includes, but is not limited to, activities like:

interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; maintaining production or sales records for use in supervision or control; appraising employee's productivity and efficiency for the purpose of recommending promotions or other changes in status; directing the work of employees; handling their complaints and grievances; disciplining employees; planning the work; apportioning the work among the workers; controlling the flow and distribution of merchandise to be bought, stocked or sold; providing for the safety and security of employees or the property; planning or controlling the budget, and monitoring and implementing legal compliance measures.

29 C.F.R. § 541.102.

In *Calvo v. B&R Supermarket, Inc.*, No. 13-cv-24000, 2014 WL 5473565, at *12 (S.D. Fla. Oct. 28, 2014) (Bloom, J.), the court granted an employer's motion for summary judgment on an assistant store manager's claim that it misclassified her as overtime exempt. The court found that the plaintiff performed many of the duties described in 29 C.F.R. § 541.102, even though she devoted a considerable amount of time to performing a "variety of manual tasks— including filling in for [her] store's hourly employees in executing their tasks." *Id.* at *13. In reaching the conclusion that the plaintiff was exempt, the court reasoned that "[c]ourts have repeatedly found the FLSA's [executive] exemption satisfied even where the employee spent upwards of 80-90% of her day performing tasks alongside other non-management employees." *Id.* (citing *Severin v. Pasha's Rests., Inc.*, 2007 WL 967021, at *6 (S.D. Fla. Mar. 22, 2007)).

In *Diaz*, 2008 WL 9463871 (S.D. Fla. 2008), the plaintiff worked as an assistant manager in a retail establishment and also performed many of the duties described in 29 C.F.R. § 541.102. The court held that the plaintiff "fit perfectly" the profile of an exempt assistant manager described in 29 C.F.R. § 541.700(c). *Id.* at *6-7 ("[T]he record evidence shows that even when performing non-management duties such as making pizzas or greeting customers, Plaintiff simultaneously continued his management duties through his supervision of the other

---

managerial tasks was exempt); *Taylor v. True North Mgmt.*, 2009 WL 2243648 (S.D. Ohio July 24, 2009) (store manager who spent 70% of time doing same work as those he supervised was exempt); *Jackson v. Jean Coutu Grp.*, 2007 WL 1850710, at *5 (S.D. Ga. June 26, 2007) (store manager who spent 95% of time on non-managerial tasks was exempt).

employees.").  The Eleventh Circuit upheld the ruling.  *See* 291 F. App'x 947 (11th Cir. 2008).

In *Jackson v. Advance Auto Parts, Inc.*, the plaintiffs attempted to "downplay and minimize the importance" of the managerial tasks they performed as assistant retail store managers by stressing that "the majority or bulk" of their time was spent performing non-managerial duties, such as selling to customers, operating the register, cleaning the store, and performing other incidental tasks.  362 F. Supp. 2d at 1335.  The court found that the plaintiffs' manual tasks "were performed simultaneously with their managerial functions," which included the plaintiffs' "responsib[ilities] for running the store and performing, among other things, the following tasks: delegating tasks to other employees; counseling or disciplining other employees; training employees; adjusting work schedules; handling customer complaints and customer refunds; and ensuring that the cash in the registers was correct, preparing bank deposits and end of day reports, and approving paid-outs."  *Id.* at 1334-35 (record citations omitted).  The court concluded that store management was the assistant managers' primary duty.  *Id.* at 1335–36.

Plaintiff's admitted duties as an EXA demonstrate her exempt role as compellingly.  (SUF ¶ 10.)  She was the sole exempt manager running her store for up to an average of 36 hours each week, and she performed almost all of the duties that the DOL has defined as exempt.[11]  *See* 29 C.F.R. § 541.102.  Her former supervisors' testimony is compelling as well.  (SUF ¶ 38 (citing Acton Dep. 86:18-91:2; Jones Dep. 132:22-137:13).)  And for her work as a manager, Walgreens rewarded her with a salary and a managers' bonus totaling around $52,000 per year.  (SUF ¶ 33.)  This, while her hourly "crew" members made about $9.27 - $9.39 per hour (annualized to $19,281.60 - $19,531.20), and the MGTs she supervised made about $15.33 - $15.95 (annualized to $31,866.40 - $33,176.00).  (SUF ¶ 34.)

Should Plaintiff argue Walgreens misclassified her because she adhered to instructions and guidelines set by her supervisor and Walgreens' corporate offices, the conclusion does not

---

[11] Interviewing (SUF ¶ 12); training employees (*Id.* at ¶¶ 8,16); adjusting their schedules (*Id.* at ¶ 22); maintaining records for use in supervision or control (*Id.* at ¶ 18); disciplining (*Id.* at ¶¶ 11, 15); directing, planning, and apportioning work (*Id.* at ¶ 18); controlling the flow and distribution of merchandise (*Id.* at ¶ 21); providing for safety and security of employees and the store (*Id.* ¶ at 22); controlling the budget (I*d.* at ¶¶ 18, 22); and monitoring and implementing compliance measures. (I*d.* at ¶ 22.)

change.  The executive exemption applies to employees who perform management duties, even within the confines of strict employer policy.  *See Donovan,* 672 F.2d at 521-22 (assistant managers at fast food restaurant exempt, even though management duties were governed by detailed, uniform standards); *Langley,* 503 F. Supp. 2d at 1303 ("[E]ven if the [district managers] circumscribed Plaintiff's discretion to a large degree by issuing instructions to Plaintiff, including instructions from a corporate manual, that would not negate the fact that Plaintiff was charged with the task of ensuring daily compliance with corporate policy or with instructions from the [district managers]."); *Pendlebury,* 2008 WL 763213 at *7 ("The fact that store managers' discretion might be circumscribed by corporate policy is unavailing").  It was Plaintiff's responsibility to effect the directions her superiors gave her.  She in fact exercised substantial managerial discretion within the parameters set by her supervisors.  The possibility that Plaintiff's managers held positions superior to Plaintiff's, or that certain department heads within her store may have reported directly to both Plaintiff and the SM, does not alter this conclusion. The management structure is not dispositive.  *See Calvo* at *15.

Plaintiff's anticipated reliance on *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233 (11th Cir. 2008) is misplaced.  In that case, after multiple trials based on representative evidence concerning aspects, but not all, of a nationwide class, the Eleventh Circuit concluded the evidence was legally sufficient for the jury to conclude that a class of 1,424 store managers— who spent 80% to 90% of their time on non-exempt duties, who were heavily supervised by higher-level managers, and who earned approximately $1.00 per hour more than the employees they supervised—did not have a primary duty of management.  *Id.* at 1271.  As is evident from cases since decided in this Circuit and elsewhere, assistant store managers and store managers alike can be classified as exempt.  If this Court nonetheless looks to *Morgan* for guidance, it should conclude that Plaintiff's role in her stores, her supervisory and other managerial responsibility, and the delta between her total compensation and that of the employees she supervised distinguish her claims from those of *Morgan's* much lower-paid managers.

### B.   Plaintiff Had Authority to Hire or Fire, or to Make Recommendations Regarding Changes in Employment Status That Were Given Serious Weight

The executive exemption requires that an employee is one with "***authority*** to hire or fire

other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion **_or any other change of status_** of other employees are given particular weight."[12]  29 C.F.R. § 541.100(a)(4) (emphasis added).  Plaintiff has admitted to possessing such hiring, promotion, and firing authority, or the authority to make recommends concerning such actions, and thus she satisfies this requirement.  She testified:

- That EXAs, like her, "have sat in on interviews, they may have done second interviews or first interviews, but [that she has] never seen an EXA that just directly hired someone without the store manager's approval."  (SUF ¶ 12 (citing Pl. Dep. 109:15-19).)

- That she conducted at least four second interviews.  (SUF ¶ 12 (citing Pl. Dep. 111:3-25.)

- That she recommended on at least one occasion a candidate not be hired, and her SM chose not to hire the candidate.  (SUF ¶ 12 (citing Pl. Dep. 111:3-14).)

- That she "gave" discipline to her subordinates that "could actually lead to an employee being terminated."  (SUF ¶ 15 (citing Pl. Dep. 151:2-6).)

- That she had the authority to send employees home.  She did this infrequently, recalling one instance where she sent an employee home for being sick, not for disciplinary reasons.  (SUF ¶ 15 (citing Pl. Dep. 227:22-228:14).)

- That she recommended two employees for promotion, with one being promoted and the other not.  (SUF ¶ 19 (citing Ans. to Interrog. No. 8 in *Teramura*).)

Plaintiff also tacitly admitted that she could hire subordinates, albeit not with a carte blanche (which the exemption does not require), testifying: "You can't just walk in and hire someone without that store manager know about [sic]. . . . So this is what you was faced with being an assistant manager and EXA as well."  (SUF ¶ 12 (citing Pl. Dep. 106:4-11).)  Plaintiff cannot dispute that EXAs had the authority to make hiring recommendations.  (*Id*. at 108:22-109:19.)

Regardless of how she may choose to spin her testimony, Plaintiff also cannot dispute that Walgreens empowered her with authority to hire, discipline towards termination, and

---

[12] The DOL "intends that this phrase be given the same meaning as that given by the Supreme Court in defining the term 'tangible employment action' for purposes of Title VII liability. . .," which the Court defined as "'a significant change in employment status, such as hiring, firing, [and] failing to promote,'" among a few other actions.  69 Fed. Reg. 22,122, 22131 (Apr. 23, 2004).  "An employee who provides guidance on any one of the specified changes in employment status may meet the section 541.100(a)(4) requirement."  *Id.*

promote employees.  The job descriptions that describe her EXA role explicitly provide that an EXA possessed such authority.  (SUF ¶ 37.)  She was trained on hiring.  (SUF ¶ 8.)  And SMs in her stores, the DMs in the Districts where her stores were located, and Walgreens' corporate representative testified she had that authority.  *See* (SUF ¶ 38 (citing Prado Dep. 172-76; Acton Dep. 159-62; Markovich Dep. 118:5-121:7; Jones Dep. 104:13-21; 113:23-117:4); *see also* Ex. 12, Platt Decl.; Ex. 13, Stenberg Decl.; Ex. 14,  Collins Decl).)

The fact that Plaintiff was vested with such authority is a crucial point because Walgreens' expectations regarding Plaintiff's duties can justify exempt status, regardless of whether she fulfilled those expectations.  *See Reyes v. Goya Foods, Inc.*, 549 F. App'x 876 (11th Cir. 2013) (affirming summary judgment in favor of employer under outside sales exemption where "[employee]'s characterization of his duties as a sales broker … [was] contradicted entirely by the testimony of [employer]'s other witnesses," who testified that non-exempt duties that plaintiff allegedly performed were "performed regularly by [employer]'s sales brokers in conjunction with and in furtherance of their own sales efforts").  For example, in *Stubbs v. McDonald's Corp.*, 2006 WL 1722267, at *15 (D. Kan. June 20, 2006), the district court granted summary judgment to the employer on the executive exemption even though he claimed to have only performed those managerial duties that were also expected of non-exempt swing managers and even though the plaintiff's supervisor had criticized him for not performing some additional duties, such as failing to give enough direction to his crew and swing managers.  The district court concluded that "[t]he record is clear that defendant ***expected*** plaintiff to perform all of the duties of a second assistant manager."  *Id*. (emphasis added).[13]

The DOL's regulations further enforce that what matters is Plaintiff's authority and Walgreens' expectations  of her duties.  The regulations do not require that an exempt employee

---

[13] *See also Brody v. AstraZeneca Pharm., LP*, 2008 WL 6953957, at *5 (C.D. Cal. June 11, 2008) (granting summary judgment on outside sales exemption based in part on employer's expectation that employee engage in sales activities); *Marx v. Friendly Ice Cream Corp.*, 380 N.J. Super. 302, 322 (2005) (analysis of exempt status requires inquiry "into the realistic requirements of the job, giving consideration to how the employee actually spends his or her time, ***but also*** considering whether the employee's practice diverges from the employer's realistic expectations.") (emphasis added).

*exercise* the provided authority to hire or fire. Rather, the regulations plainly state that the exemption is satisfied if the employee "**has the authority** to hire **or** fire other employees **or** whose suggestions and recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees are given particular weight." 29 C.F.R. § 541.100(a) (emphasis added). The DOL has explained, further, that "an executive does not have to possess full authority to make the ultimate decision regarding an employee's status, such as where a higher level manager … makes the final hiring, promotion, or termination decision." 69 Fed. Reg. 22,122, 22131 (Apr. 23, 2004).

Taking all of this together, the evidence demonstrates unequivocally that Walgreens properly classified Plaintiff as exempt pursuant to the FLSA's executive exemption.

## II.      Plaintiff is Also Exempt Pursuant to the FLSA's Administrative Exemption

In its Preamble to the white-collar regulations, the DOL explains that supervisory "employees who cannot meet the 'hire or fire' requirement in section 541.100(a)(4) may nonetheless qualify for exemption as administrative . . . employees."[14]  *Id.* at 22,132. The evidence in this case, including Plaintiff's admissions, confirm that she met the "hire or fire" requirement while working as an EXA. Assuming she did not, she nevertheless was properly classified under the administrative exemption because she (i) performed office or non-manual work directly related to the management or general business operations of her stores; and (ii) she exercised discretion and independent judgment regarding matters of significance. 29 C.F.R. § 541.200. Duties that satisfy the primary duty test for this exemption include, among others, purchasing, safety and health, personnel management, human resources, legal and regulatory compliance, and similar activities. *See* 29 C.F.R. § 541.201(b). As described in Walgreens' SUF and in the preceding sections, Plaintiff performed many duties within these categories of work that satisfy the administrative exemption. *See Lott v. Howard Wilson Chrysler-Plymouth,*

---

[14] The DOL confirmed this principle at 29 C.F.R. § 541.708, titled "Combination Exemptions." That section provides: "Employees who perform a combination of exempt duties as set forth in the regulations in this part for executive [and] administrative . . . employees may qualify for exemption. Thus, for example, an employee whose primary duty involves a combination of exempt administrative and exempt executive work may qualify for exemption."

*Inc.*, 203 F.3d 326, 332 (5th Cir. 2000) (holding that the plaintiff primarily performed non-manual work directly related to management operations because her duties included, *inter alia*, supervising employees); *Crayton v. Valued Servs. of Ala., LLC*, 737 F. Supp. 2d 1320, 1341 (M.D. Ala. 2010) (manager of payday lending store satisfied administrative exemption; reasoning that the "ultimate question is whether the employee has the ability to make an independent choice … [but] there is no requirement that the employee operate free from oversight…."); *Coppage v. Bradshaw*, 665 F. Supp. 2d 1361, 1367 (N.D. Ga. 2009) ("An employee exercises discretion when he compares and evaluates possible courses of conduct and acts after considering the various possibilities.") (citing 29 C.F.R. § 541.202).

Plaintiff no doubt "generally, and understandably, seeks to minimize the scope and importance of her management-related duties." *Crayton*, 737 F. Supp. 2d at 1340.  As in *Crayton*, however, the administrative exemption applies to Plaintiff because she exercised discretion and independent judgment that were undeniably matters of significance to Walgreens. She decided "whether and how to discipline her subordinates or refer them for discipline to her supervisors" and, especially in the 36 or more hours each week when she ran her stores as the top manager in them, "she exercised discretion and independent judgment in delegating work, directing her subordinates in their duties, . . . and overseeing the business operations of the store." 737 F. Supp. 2d at 1341.  She also analyzed data in KPI reports, which she used for the purpose of managing the departments under her watch.  (SUF ¶ 18.)  For these reasons, Plaintiff was an exempt administrative employee.  No reasonable jury could find otherwise.

### III.    Plaintiff Cannot Prove Walgreens Willfully Violated the FLSA

If Plaintiff's claims somehow survive summary judgment, then her claims should be limited to the FLSA's standard two-year statutory period.  The FLSA's two-year period recovery period is extended to three years *only* where an employee proves not just that her employer violated the FLSA, but that it " knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, (1988).  This standard should not be taken lightly, as "[t]he Eleventh Circuit is hesitant to find willful behavior ... , even when presented with strong evidence of an employer's violation of the

FLSA." *Saxton v. Young*, 479 F. Supp. 2d 1243, 1253 (N.D. Ala. 2007).

In this case, Plaintiff admits that she has ***no evidence*** to prove that Walgreens willfully, knowingly, or recklessly violated the FLSA.  (SUF ¶ 32.)  And, as an opt-in plaintiff in *Teramura*, she acknowledged that the vast majority of plaintiffs and opt-ins met the requirements for the executive exemption and others could qualify for the administrative and/or combination exemptions.  (*Teramura*, Dkt. 283, at 22-23.)  These acknowledgments alone should suffice to establish that Walgreens did not willfully, knowingly, or recklessly violate the FLSA.

Any claim to the contrary is further negated by the cases confirming that retail store managers and assistant store managers can be classified as exempt, by the DOL's express reference to assistant store managers as an exempt job in its regulations, and by the fact that Walgreens takes care to comply with applicable laws and has a sophisticated legal department to ensure it does.  (SUF ¶¶ 26, 31; Bourdo Dep. 125:25-127:3.)  If Plaintiff's claim somehow survives this motion, this Court should, at the very least, enter summary judgment on her claim that Walgreens willfully violated the law and limit her to a two-year limitations period.

**IV.    Plaintiff Is Precluded and Estopped From Making Claims Contrary to Her Representations in *Teramura*, and If She is Not, Then She Should Be Prohibited From Relying on *Teramura* at All, Including Tolling Provided By That Case**

Plaintiff looks to *Teramura* to provide tolling on the statute of limitations for her FLSA claim as of April 5, 2012, when she joined *Teramura*, rather than September 12, 2014, when she filed this lawsuit.  *See* 29 U.S.C. §§ 255, 256 (providing for tolling of FLSA statute of limitations, both where a plaintiff is a named party and where the plaintiff later joins as an opt-in). In so doing, she clearly accedes to *Teramura*'s relevance to this lawsuit.  (Compl. ¶¶ 4-8.)

Plaintiff's representations in *Teramura* raise the question as to why she claims Walgreens willfully violated the FLSA.  As Plaintiff acknowledged through her then-counsel in *Teramura*, the "executive exemption's duties requirements are certainly met by the vast majority of Plaintiffs and Opt-In Plaintiffs," and those who do not qualify for that exemption perform administrative duties or a combination of executive and administrative duties.[15]  (*Teramura*, Dkt.

---

[15] Plaintiffs in *Teramura*, through Plaintiff's counsel in that case, stipulated to dismissal with prejudice, explaining among other things why an assistant store manager may be classified

283 at 22-23.)  Plaintiff should be estopped from claiming in this case that Walgreens violated the FLSA, much less that it did so willfully, in classifying her as exempt.  *See Adams v. U.S.*, 38 Fed. Cl. 572, 574 (Fed. Cl. 1997) ("'The doctrine of judicial estoppel is that where a party successfully urges a particular position in a legal proceeding, it is estopped from taking a contrary position in a subsequent proceeding where its interests have changed.'") (quoting *Data General Corp. v. Johnson*, 78 F.3d 1556, 1565 (Fed. Cir. 1996)).

Should Plaintiff be permitted to disavow some aspects of *Teramura*, then she should not be entitled to cherry-pick those aspects that favor her, including tolling.  If the record and rulings in *Teramura* do not apply to Plaintiff, then her claim must be treated like any other claim under the FLSA.  As such, the furthest back she could possibly recover is September 12, 2011 (i.e., three years prior to the date that she filed this action), and, if this Court agrees that Plaintiff's admitted dearth of evidence is a death knell to her ability to prove a willful violation (as set forth in the preceding Section), then her claims are time-barred, given that a standard two-year period would reach back only to September 12, 2012, by which time Plaintiff's employment had ended.

## CONCLUSION

Based on the evidence, any reasonable jury would find in Walgreens' favor, whether on the executive exemption, the administrative exemption, or a combination of the two.  This Court should, therefore, enter summary judgment in Walgreens' favor.  If this Court declines to do so, it should nonetheless enter summary judgment on Plaintiff's claim that Walgreens willfully violated the FLSA.  Her concession that she has no evidence to prove her claim that Walgreens willfully violated the FLSA, as well as her representations in *Teramura*, are fatal.  Should Plaintiff argue that *Teramura* does not apply to her, then this Court should accordingly rule she is not entitled to the tolling provided by that case, such that her claim is time-barred if she cannot prove a willful violation, or that it reaches back to September 12, 2011 if she can.

Dated:  March 2, 2015                                    Respectfully submitted,

                                                         s/ Kevin M. Young
                                                         Brett C. Bartlett*

---

properly as exempt under the FLSA.  (Ex. 15, Stipulation of Dismissal.)

Georgia Bar No. 040510
bbartlett@seyfarth.com
Kevin M. Young
Florida Bar No. 114151
Kyoung@seyfarth.com
SEYFARTH SHAW LLP
1075 Peachtree Street, N.E., Suite 2500
Atlanta, Georgia  30309
Telephone:  (404) 885-1500
Facsimile:  (404) 892-7056

*Admitted *Pro Hac Vice* on November 7, 2014

COUNSEL FOR DEFENDANT

Suzanne A. Singer
Florida Bar No. 946222
ssinger@rumberger.com
RUMBERGER KIRK & CALDWELL
Brickell Bayview Centre, Suite 3000
80 Southwest 8th Street
Miami, Florida  33130
Telephone:  (305) 995-5457
Facsimile:  (305) 371-7580

LOCAL COUNSEL FOR DEFENDANT

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of the foregoing **Defendant's Motion for**

**Summary Judgment and Memorandum in Support** was served electronically on March 2,

2015 on all counsel or parties of record on the Service List below.

<u>s/ Kevin M. Young</u>
One of Counsel for Defendant

**SERVICE LIST**

*Attorney for Plaintiff:*

Mark A. Cullen
mailbox@cullenlawfirm.net
Florida Bar No. 325082
Clearlake Plaza
500 S. Australian Avenue, Suite 543
West Palm Beach, Florida 33401
Telephone:  (561) 640-9191
Facsimile:  (561) 214-4021