UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.  9:14-CV-81176-ROSENBERG/BRANNON

RUBY WARNER,

    Plaintiff,

v.

WALGREEN CO., d/b/a WALGREENS,

    Defendant.
    _____/

ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AS TO PLAINTIFF'S CLAIMS IN THE ENTIRETY

This matter is before the Court on Defendant's Motion for Summary Judgment as to Plaintiff's Claims in the Entirety [DE 51]. The Motion has been fully briefed by both sides and the Court heard oral argument on the Motion on May 1, 2015. The Court has reviewed the documents in the case file and is fully advised in the premises. For the reasons set forth below, the Motion is denied as to Walgreens' executive exemption defense, denied as to Walgreens' administrative exemption defense, and granted as to Walgreens' statute of limitations argument.

**I.   DISPUTED AND UNDISPUTED FACTS**

This case is about the application of federal labor laws to an assistant manager in a retail store. Plaintiff, Ms. Ruby Warner, is a former employee of Defendant, the Walgreen Company. DE 51-1 ¶ 2. Ms. Warner was first hired by Walgreens in 1999. *Id.* At that time, Ms. Warner was hired as a Management Trainee. *Id.* As a Management Trainee, Ms. Warner was paid an hourly wage and was eligible for overtime pay. *Id.* Between 1999 and 2006, Ms. Warner sought on at least three separate occasions to be promoted to the next highest position in the Walgreens

1

hierarchy, Executive Assistant Manager ("EXA").  *Id.*  ¶¶ 3-6.  Ms. Warner's third attempt at promotion in 2006 was successful and she was promoted to the position of EXA.  DE 45-1 at 29.

As an EXA, Ms. Warner was a salaried employee, no longer eligible for overtime, and she was eligible to receive an annual bonus (that hourly-wage employees were not eligible for).  DE 51-1 ¶¶ 7, 25.  Ms. Warner's new position as an EXA required her to take and complete a series of management training courses.  *Id.* ¶ 8.  Her immediate superior was a store manager.  *Id.* ¶ 7.  As an EXA, no employee (other than the store manager or district manager) could delegate or assign work to Ms. Warner.  *See id.* ¶ 11.  Ms. Warner did, however, have the authority to assign and delegate work to all other store employees (again excepting the store manager or a district manager).  *See id.*  Ms. Warner also conducted three or four second interviews for potential hires.  *Id.* at ¶ 12.  On at least one occasion, Ms. Warner recommended that an applicant not be hired and this recommendation was ultimately followed.[1]  *Id.*

According to Ms. Warner, she spent a considerable amount of time as the highest ranking employee in her store.  *Id.* ¶ 10.  More specifically, Ms. Warner estimates that somewhere between 55% and 65% of the time there was no store manager present during her work shift, and that she worked an average of 60 hours per week.  *Id.*  It is therefore Ms. Warner's testimony that she was the highest ranking employee in her store for approximately 36 hours per week.  *See id.*  From April 13, 2010 to August 29, 2010, Ms. Warner supervised (although the parties dispute the level of supervision) approximately ten to fifteen employees during her weekly shifts.[2]  *Id.* ¶ 11.

---

[1] Ms. Warner disputes the relevancy of these interviews because they were conducted in 2009.  The Court finds any argument related to relevancy unpersuasive, however, as Ms. Warner's position at Walgreens in 2009, as an EXA, was the same as Ms. Warner's position in the time period at issue in this case—EXA.  Nonetheless, this issue is ultimately moot for the reasons set forth below.

[2] This number represents the total number of employees whose shifts *overlapped* with Ms. Warner's shift.

Ms. Warner's duties as an EXA included work that non-exempt, hourly-wage employees under her supervision performed. *See id.* ¶ 21. For example, Ms. Warner worked the store cash register and stocked shelves. *Id.* The *amount* of non-managerial work that Ms. Warner performed as an EXA is a hotly contested issue in this case. It is Ms. Warner's testimony that non-managerial work comprised over ninety percent of her time. DE 54-2 ¶ 21. More specifically, it is Ms. Warner's testimony that over ninety percent of her day was spent unloading freight trucks, managing inventory in the back of the store, and stocking shelves. *Id.* While performing this work, it is also Ms. Warner's testimony that (i) she was unable to supervise the other employees in the front of the store and (ii) due to her inability to supervise, the store manager would appoint shift leaders (from the pool of available hourly-wage employees) who would supervise the front area of the store. *Id.* ¶¶ 21, 10-11. Finally, Ms. Warner consistently testified that she was unable to exercise any significant managerial responsibilities in her stores because (i) she was constrained by store policies and (ii) any decision of significance required store manager approval. *See generally* DE 54-2.

Ms. Warner resigned from Walgreens in 2012. DE 51-1 ¶ 9. In 2013 Ms. Warner joined a class-action lawsuit against Walgreens styled *Teramura, et al. v. Walgreen Co.*, No. 12-cv-05244, in the Western District of Arkansas. *Id.* ¶ 27. Ms. Warner was dismissed from that suit and has since elected to pursue an independent action—the instant case. *Id.* ¶¶ 28-29.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The existence of a factual dispute is not by itself sufficient grounds to defeat a motion for summary judgment; rather, "the requirement is that there be no *genuine* issue of *material* fact."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A dispute is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (citing *Anderson*, 477 U.S. at 247-48). A fact is material if "it would affect the outcome of the suit under the governing law ." *Id.* (citing *Anderson*, 477 U.S. at 247-48).

In deciding a summary judgment motion, the Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). The Court does not weigh conflicting evidence. *See Skop v. City of Atlanta*, 485 F.3d 1130, 1140 (11th Cir. 2007). Thus, upon discovering a genuine dispute of material fact, the Court must deny summary judgment. *See id.*

The moving party bears the initial burden of showing the absence of a genuine dispute of material fact. *See Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). Once the moving party satisfies this burden, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., LLC*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "[t]he non-moving party must make a sufficient showing on each essential element of the case for which he has the burden of proof." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Accordingly, the non-moving party must produce evidence, going beyond the pleadings, to show that a reasonable jury could find in favor of that party. *See Shiver*, 549 F.3d at 1343.

### III.   LEGAL ANALYSIS AND DISCUSSION

Ms. Warner has brought in the instant case a claim for unpaid overtime wages against Walgreens under the Fair Labor Standards Act. FLSA overtime requirements exempt, however,

4

"any employee employed in a bonafide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). Walgreens argues that it is entitled to judgment as a matter of law because Ms. Warner qualified for the FLSA overtime exemption as both an executive employee and as an administrative employee. Each exemption is discussed in turn. Additionally, the Court addresses a third component of Walgreens' motion for summary judgment which concerns the statute of limitations applicable to FLSA claims.

    1.    **The Executive Exemption**.

To qualify for the FLSA executive exemption, an employee must be paid on a salary basis at a rate of at least $455.00 per week[3] and must: (A) have management as his or her primary duty; (B) customarily and regularly direct the work of two or more employees; and (C) have authority to hire or fire other employees or have his or her recommendations as to the hiring, firing, advancement, promotion, or other change in status of employees, considered seriously. *See* 29 C.F.R. § 541.100(a). Ms. Warner disputes that each of these three requirements are met in this case.

Ms. Warner disputes that her primary duty was management. Instead, Ms. Warner's position is essentially that her primary duty was to move freight and stock inventory. Her position is supported by evidence in the record through her testimony that she spent ninety percent of her time unloading freight trucks, managing inventory in the back of the store, and stocking shelves. DE 52-2 ¶ 21. The most recent published opinion of the Eleventh Circuit Court of Appeals considering this area of law is *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233 (11th Cir. 2008).

---

[3] The parties do not dispute this element of the exemption. DE 51-1 ¶ 33.

In *Morgan*, the Eleventh Circuit considered a class of store managers who oversaw discount retail stores. The evidence admitted at trial relevant to the FLSA executive exemption included evidence that the managers exercised very little discretion and that the managers spent 80% to 90% of their time on manual-labor tasks. *Id.* at 1249. More specifically, the managers in that case were required to stock shelves, unload trucks, operate cash registers, clean bathrooms, clean the parking lot, and clean the store in addition to more typical managerial activities such as making bank deposits and completing paperwork. *Id.* The *Morgan* court considered regulatory guidance as to the types of activities that are considered to be managerial:

> [A]ctivities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

29 C.F.R. § 541.102. Regulations do not define, however, "primary duty" and instead an employee's primary duty classification "must be based on all facts in a particular case." 29 C.F.R. § 541.700(a). Regulations do provide factors a court may consider in determining whether an employee's primary duty is management:

> [T]he relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

6

*Id.* Unsurprisingly, the time an employee spends on managerial duties is an important factor under the regulations, but even an employee who spends less than fifty percent of his or her time on managerial duties may still qualify under the executive exemption if "other factors support such a conclusion." 29 C.F.R. § 541.700(b). Similarly, "[c]oncurrent performance of exempt and nonexempt work does not disqualify an employee from the executive exemption if [requirements are otherwise met]." 29 C.F.R. § 541.106(a). Finally, the burden of proving an exemption lies with a defendant as an affirmative defense and the exemption should only be applied to employees who are "clearly and unmistakably within the terms and spirit of the exemption." *Morgan*, 551 F.3d at 1269 (quoting *Brock v. Norman's Country Market, Inc.*, 835 F.3d 823, 826 (11th Cir. 1988)).

The *Morgan* court therefore applied the above-cited regulatory principles to the store managers in that case. Referencing the time-spent-on-exempt-work factor, the court noted "the overwhelming evidence at trial showed [the] store managers spent 80 to 90% of their time performing nonexempt, manual labor, such as stocking shelves, running the cash registers, unloading trucks, and cleaning the parking lots, floors, and bathrooms. Conversely, Plaintiff store managers spent only 10 to 20% of their time performing exempt work, a far cry from the DOL's 50% guideline for management tasks." *Id.* The court also discussed the relative freedom that store managers had from direct supervision: "There was overwhelming evidence that store managers spent only 10 to 20% of their time on exempt (i.e., managerial) work. Plaintiffs presented evidence that store managers rarely exercised discretion because either the operations manuals or the district managers' directives controlled virtually every aspect of a store's day-to-day operations." *Id.* at 1270.

Having considered the Eleventh Circuit's analysis in *Morgan*, the Court turns its attention to the instant case. With respect to the amount of time spent on non-managerial duties, it is Ms.

7

Warner's testimony that she spent ninety percent of her time on non-managerial duties—like the store manager plaintiffs in *Morgan*—and the *Morgan* court expressly found that an employee unloading freight could not concurrently manage employees in the front of a store. *See id.* at 1272-73. With respect to the relative importance of her managerial duties, it is Ms. Warner's testimony that the relative importance of her managerial duties was miniscule because (i) she spent so little time performing those functions, (ii) other employees were designated "shift leaders" so she could unload freight, and (iii) manual labor (on behalf of EXAs) was an important part of Walgreens' business model—which was also the case in *Morgan*. With respect to the relative freedom Ms. Warner enjoyed from supervision, while the record does establish that Ms. Warner was the highest ranking employee in her store for many hours per week, there is also record evidence that Ms. Warner's discretion was restricted through a combination of Walgreens policies and store manager oversight. *See generally* DE 54-2. This too is similar to *Morgan* because in *Morgan* the store managers were necessarily the highest ranking employees in the store and they too had substantial restrictions over their discretion from corporate policies and a higher-ranking manager, a district manager. *Morgan*, 551 F.3d at 1271. With respect to the comparison of Ms. Warner's compensation with the compensation of non-exempt workers at Walgreens, if Ms. Warner's salary is converted to an hourly wage based upon the assumption (via her testimony) that she worked fifty, and sometimes sixty, hour weeks, Ms. Warner's hourly wage would compute to somewhere between $16.09 per hour and $20.36 per hour, depending upon which year of Ms. Warner's employment is examined.[4] By comparison, a management trainee at Walgreens, an

---

[4] These calculations and the calculations pertaining to management trainees are necessarily subject to variance depending upon assumptions over the number of hours worked and the amount of any annual bonus. Even so, the range of Ms. Warner's hourly wage in the instant case juxtaposed to manager trainees' wages in the instant case are comparable (in terms of a percentage difference) with the range of wages discussed in *Morgan*.

8

hourly-wage employee eligible for overtime, could have received somewhere between $18.27 per hour and $19.39 per hour. *See* DE 51-1 ¶¶ 33-34. The effective hourly wages in the instant case are therefore similar to the effective hourly wages in *Morgan* where store managers, once their hours were factored into their salaries, made only two to three dollars per hour more than assistant managers. *Morgan*, 551 F.3d at 1271.

Walgreens disputes the testimony of Ms. Warner on a variety of levels. For example, Walgreens disputes the level of supervision that Ms. Warner had over lower-ranked employees. Walgreens also disputes the level of discretion Ms. Warner was entitled to exercise in the discharge of her duties, and Walgreens disputes the relative importance of Ms. Warner's managerial responsibilities. The gravamen of Walgreens' arguments were raised, however, by the defendants in *Morgan*. Ultimately, for all of the reasons outlined above the Court finds that *Morgan* is analogous to the instant case. To the extent Walgreens disputes the record evidence in favor of Ms. Warner, Ms. Warner is the non-moving party on the motion for summary judgment before the Court and all inferences in the record must be construed in her favor. Viewed in this light, and viewed in the context of the facts at issue in *Morgan*, the Court finds that there is a question of material fact as to whether Ms. Warner's primary duty was management.

Although Walgreens cites to a number of cases that have found assistant managers qualify for the executive exemption as a matter of law—even when the assistant managers spent far greater than fifty percent of their time on non-managerial tasks—Walgreens' authority may be divided into two concrete categories. The first such category encompasses cases that have been decided outside of this circuit. The Court finds these cases unpersuasive in light of the binding precedent of

9

*Morgan*. The second category encompasses cases decided in this circuit prior to *Morgan*.[5] *E.g., Diaz v. Team Oney, Inc.*, No. 07-21573-CIV, 2008 WL 9463871 (S.D. Fla. Apr. 29, 2008); *Jackson v. Advance Auto Parts*, 362 F. Supp. 2d 1323, 1334 (N.D. Ga. 2005). Although the Court expresses no opinion whether the Eleventh Circuit's decision in *Morgan* would have prompted a different result in the cases decided in this circuit prior to *Morgan*, the Court finds nonetheless that *Morgan*, as binding authority, is the proper lens with which to view the facts before the Court. The Court's own research has revealed no cases in this district that cite and discuss *Morgan* on the issue of executive exemption, but the cases that have cited to *Morgan* outside of this district on the issue of executive assumption have overwhelmingly declined to find that an executive exemption applied as a matter of law. *E.g.*, *Barreto v. Davie Marketplace, LLC*, 331 F. App'x 672 (11th Cir. 2009); *Bond v. Ripa & Assocs.*, No. 808-CV-2056, 2010 WL 457324 (M.D. Fla. Feb. 4, 2010); *Davis v. Wal-Mart Stores, Inc.*, No. 10-cv-68, 2010 WL 3718834 (M.D. Ala. Sept. 13, 2010).

In summary, the facts of instant case are highly analogous to the facts in *Morgan*, exemptions under the FLSA must be narrowly construed, and the record in this case must be viewed in the light most favorable to Ms. Warner. As a result, the Court finds that there are questions of material fact as to whether Ms. Warner's primary duty was management, and Walgreens therefore cannot meet its burden to establish as a matter of law the executive exemption applied to Ms. Warner. The Court's decision on this matter applies to at least one other element necessary for the executive exemption as well. For example, if Ms. Warner's testimony is accepted

---

[5] Walgreens does cite to a few cases in this circuit that were decided subsequent to *Morgan* and which involved the application of the executive exemption as a matter of law under the FLSA. For example, Walgreens cites to *Calvo v. B&R Supermarket, Inc.*, No. 13-cv-24000, 2014 WL 5473565 (S.D. Fla. Oct. 28, 2014) and *Brillas v. Bennet Auto Supply, Inc.*, 675 F. Supp. 2d 1164 (S.D. Fla. 2009). Neither case cites to *Morgan*. Upon review of *Calvo* and *Brillas*, it is the Court's conclusion that the facts in those cases are sufficiently different from the facts in the instant case such that *Morgan* is determinative in the instant case. In *Calvo* there was very significant evidence that the plaintiff routinely and systemically performed managerial work and in *Brillas* the plaintiff had actually conceded (to an extent) that his primary duty was management.

as true that she spent ninety percent of her time on tasks that did not allow her to concurrently supervise employees in the store, it necessarily follows that Ms. Warner spent approximately five hours per week working as a supervisor. Given that the third element for the executive exemption requires a supervisor to supervise at least eighty employee-hours per week,[6] and given that Ms. Warner never supervised more than five employees at one time,[7] there is a question of material fact as to whether Ms. Warner supervised eighty-employee hours per week. Accordingly, for all of the reasons set forth above, summary judgment must be denied as to the executive exemption.

2. **The Administrative Exemption**.

Walgreens argues that even if Ms. Warner does not qualify under the executive exemption, she nonetheless qualifies under the administrative employee exemption. This exemption applies to an employee:

> (1) Compensat[ed] on a salary or fee basis at a rate of not less than $455 per week (or $380 per week, if employed in American Samoa by employers other than the Federal Government), exclusive of board, lodging or other facilities;
>
> (2) Whose *primary duty* is the performance of office or *non-manual* work directly related to the management or general business operations of the employer or the employer's customers; and
>
> (3) Whose primary duty includes the *exercise of discretion* and independent judgment with respect to *matters of significance*.

29 C.F.R. § 541.200(a) (emphasis added). As discussed above, however, Ms. Warner has testified that ninety percent of her work was on manual-labor tasks. DE 54-3 at 4. Ms. Warner further testified that she never reviewed an employment application and that she never analyzed operating

---

[6] *See Morgan*, 551 F.3d at 1275.

[7] There is some confusion in the record as to how many employees Ms. Warner supervised at any given time. Even so, there is no evidence in the record to support the finding that Ms. Warner supervised (at the same time) sixteen separate employees, which would be the number of employees Ms. Warner would have to simultaneously supervise for her to satisfy the third element of the executive exemption, provided that Ms. Warner's five hours of supervisory duties per week is accepted as true.

11

statements for her store.  DE 45-1 at 37, 52.  For the same reasons an issue of fact exists as to the application of the executive exemption, an issue of material fact exists as to whether Ms. Warner's "primary duty [was] . . . office or non-manual work."  *Id.*

Similarly, Ms. Warner has testified that she was unable to exercise her discretion and independent judgment as an assistant manager because she was constrained by a combination of corporate policies and store manager oversight.  Ms. Warner further testified that she had no authority to order staff to come to work (when there was a staff shortage) and that she had no authority to modify staff schedules without store manager approval.  DE 45-1 at 33, 55.  Accordingly, there is a question of material fact as to whether Ms. Warner's "primary duty include[d] the exercise of discretion and independent judgment with respect to matters of significance."  *Id.*  Particularly in light of the fact that all evidence in the record must be viewed in the light most favorable to Ms. Warner, only a trier of fact can determine whether Ms. Warner's job was to move freight and stock shelves or to perform administrative office work while exercising her independent discretion.  Accordingly, summary judgment must be denied as to the administrative exemption.

   3. **The FLSA Statute of Limitations**.

FLSA actions are subject to a two-year statute of limitations.  29 U.S.C. § 255(a).  Because the instant action was filed on September 12, 2014, at least a portion of Ms. Warner's FLSA claim is subject to the statute of limitations.  Ms. Warner therefore seeks to invoke the exception which extends the statute of limitation period to three years from two.  This exception allows for such an extension when a defendant's violation of the FLSA is willful.  *Id.*

Ms. Warner argues that Walgreens' failure to pay her overtime compensation was a willful violation due to the following.  First, Walgreens altered its practice of allowing overtime in 2007 in

12

such a way as to try to eliminate overtime pay. DE 46-1 at 26. Second, Ms. Warner argues that, logically, the elimination of the authorization for overtime did not have the result of eliminating the need for overtime labor. Third, subsequent to the overtime change Ms. Warner was required to work additional hours to compensate for the loss of overtime labor by hourly employees. Fourth, Walgreens was on notice that its use of EXAs (in a manner similar to Ms. Warner's testimony) violated the FLSA by virtue of a series of lawsuits. *See* DE 54 at 19-20. Fifth, despite such notice, Walgreens did not alter its policies or adjust the responsibilities of the EXA position for many years, nor did Walgreens perform a study to analyze FLSA exemptions in the context of how EXAs were actually utilized in Walgreens' stores. *See* DE 46-1 at 18-20.

> The standard for willfulness under the FLSA is quite high:
>
> [I]f an employer's FLSA violations stem from mere negligence or from actions that are unreasonable but not 'reckless,' the employer's liability for compensatory damages is limited to no more than two years. Similarly, the mere fact that the employer knows the FLSA is 'in the picture' is not dispositive of willfulness, and a mere lack of prudence is insufficient to support a finding of willfulness. The plaintiff has the burden to demonstrate reckless disregard in order to extend the statute of limitations.

*Henderson v. Payless Shoes*, No. CV204-70, 2006 WL 346467, at *7 (S.D. Ga. Feb. 14, 2006) (citation omitted). A case decided by the Eleventh Circuit Court of Appeals, *Reich v. Department of Conservation and Natural Resources*, is helpful on this point. 28 F.3d 1076 (1994). In *Reich*, the appellate court found that the record showed substantial evidence that the defendant had failed to enforce its own policies regarding overtime work but, nonetheless, the appellate court refused to find that the defendant's behavior was willful. *Id.* at 1084. Importantly, the appellate court noted that it took more than two years for the defendant's behavior and policies to change from "a pattern of acquiescence" to "a more vigilant attitude." *Id.* In summary, the *Reich* court held "Although the [defendant] should have done more to ameliorate the problem, it did at least attempt to address it,

albeit ineffectively. We cannot say on the basis of the record before us that it showed reckless disregard for the matter of whether its conduct was prohibited. Its failure to rectify this troublesome situation can better be described as resulting from negligence rather than from willfulness." *Id.*

Even viewing the evidence in the record in the light most favorable to Ms. Warner, the Court cannot find that Ms. Warner has produced sufficient evidence to survive summary judgment on the issue of willfulness. The crux of Ms. Warner's arguments on this point rest upon a series of lawsuits against Walgreens, but as discussed above in section 1 there was ample authority (in this district alone) to support Walgreens' position as recently as 2008. Moreover, just because one jury may decide a particular EXA did not qualify for an executive exemption, there is nothing to preclude a separate jury from reaching the opposite result on different facts; questions such as these are case specific by law. 29 C.F.R. § 541.700(a) (requiring that an employee's primary duty classification "must be based on all facts in a particular case"). Finally, Ms. Warner concedes that Walgreens has recently altered the EXA position to give employees employed in that position greater managerial authority. DE 54 at 20. Walgreens' actions in this regard are, at the very least, exercised in an abundance of caution and are comparable to the actions of the defendant in *Reich* that, albeit slowly, altered policies to comply with FLSA requirements.

In summary, there is insufficient evidence in the record to support a finding that Walgreens willfully violated FLSA requirements. As such, Walgreens is entitled to judgment as a matter of law as to this issue. Finally, although Walgreens has argued that Ms. Warner's participation in the case of *Teramura, et al. v. Walgreen Co.* should not toll the statute of limitations in this case, Walgreens' argument on this point was entirely premised on Ms. Warner's assertion that Walgreens willfully violated the FLSA. Because the Court has found that Walgreens did not willfully violate the FLSA, the Court finds that Walgreens' opposition to tolling has become moot.

The Court therefore sees no reason to estop or otherwise preclude Ms. Warner from the tolling she is otherwise entitled to due to her participation in the *Teramura, et al. v. Walgreen Co.* case.

## IV.     CONCLUSION

For the foregoing reasons, Walgreens' Motion for Summary Judgment as to Plaintiff's Claims in the Entirety [DE 51] is **DENIED** as to Walgreens' executive exemption defense, **DENIED** as to Walgreens' administrative exemption defense, and **GRANTED** as to Walgreens' statute of limitations argument on the issue of willfulness.

**DONE and ORDERED** in Chambers, Fort Pierce, Florida, this 14th day of May, 2015.

_____
ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to: Counsel of Record